MICHAEL G. RANKIN
City Attorney
Michael W. L. McCrory
Principal Assistant City Attorney
P.O. Box 27210
Tucson, AZ 85726-7210
Telephone:  (520) 791-4221
State Bar 3899
PCC No. 37268
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PHILLIP G. SHULOCK, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF TUCSON, a municipality; et al.,<br><br>Defendant. | Case No. CV 07-618-TUC-DCB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>**Assigned to: Hon. David E. Bury** |

Now come Defendants, by and through the undersigned counsel, and respond to Plaintiff's Motion to Compel as follows:

**1.      Plaintiff's Request C**

This request seeks all documents "cited" in a letter from Liana Perez to Mike Nelson dated Feb. 10, 2004.   The letter referenced the City's Equal Employment Office review of the Dec. 9, 2003 complaint from the Plaintiff regarding his Sept. 25, 2003 evaluation.   Copies of the December 9th complaint and the September 25th evaluation and Mike Nelson's memorandum to Liana Perez have been produced by

both the Plaintiff and the Defendants.   [Shulock 0029-30, 0035-37; Defendants 000105-112]

Anita Velasco's personal file contained no records that directly pertained to the Feb. 10, 2004 letter.  Liana Perez's file includes sequentially the documents referred to above as Defendants 000438-446.

Plaintiff's Motion to Compel Discovery specifically notes that Ms. Velasco "provided" information to Ms. Perez, and the Plaintiff "simply seeks to have the documents provided . . ." be produced.   The motion thus falsely equates providing information with providing documents.  In fact, Plaintiff asked Ms. Velasco at her deposition whether any documents had been provided with the Feb. 10, 2004 letter and was told "no".  (Velasco, pg. 105, ln 7-10, attached as Exhibit 1.)  Moreover, neither the file for Ms. Velasco nor Ms. Perez includes any such documents.  Plaintiff already knows that he has all documents pertaining to this letter and that the specific documents sought in the motion do not exist.

**2.    Plaintiff's Request D**

This request seeks the documents related to a letter from Anita Velasco to Plaintiff's health care provider that requests clarification of a specific medical certification which the letter states is attached.  The document was produced by the Plaintiff and does not include the attached medical certification.

As Plaintiff acknowledged in his deposition, none of the medical certifications he provided to the City are dated.  Since Plaintiff was the person who provided the

medical certification, he is the one who best knows which certification was provided at what time.

Defendants' response was to refer to Plaintiff's personnel file.  The personnel file is arranged as it was maintained by the City in generally chronological order.  Had the Plaintiff simply taken a few minutes to locate the time period referenced in Ms. Velasco's letter, August 16, 2004, Plaintiff would have found an undated medical certification that was received by the City on August 13, 2004, and which contains the reference cited in the letter.  (Defendants 000088-90.)   Immediately following that document is the document cited by the Plaintiff's request.  (Defendants 000092.)  That minimal effort would have taken less time than this part of the motion.

### 3.      Plaintiff's Request E

This request seeks "any and all documents . . . related to the proposed termination of Mr. Shulock . . ."  The language of the request raises several areas where Defendants must read the Plaintiff's mind.  First, Plaintiff is asserting that his claims of discrimination and retaliation are based upon a course of conduct that stretches from his initial employment in the mid 1990's to his termination.  Given that scope of the Plaintiff's claim, all the documents throughout his employment career may refute his claims and be potentially "related" to his proposed termination.  "When, as here, broad discovery requests lead to relevant documents being mixed in with seemingly irrelevant documents, the fault lies just as much with the party who made the request as with the party who produced documents in response to the

request." *Community House, Inc. v. City of Boise, Idaho*, 2009 WL 1650463, 2 -3 (D.Idaho,2009).

Next, it is not clear what Plaintiff means by "proposed" termination.   The City issued a notice of "proposed discipline" related to Plaintiff's termination in August, 2006.  Yet there was also an earlier "proposed" termination in December, 2005, which did not result in the immediate termination of the Plaintiff but which was incorporated into that discipline.   Plaintiff, of course, already has multiple copies of these documents.

Then there is also a question of whether any documents related to any matter that is addressed in either of the proposed terminations is also intended to be included in the request.  If so, technically individual attendance records could be argued to be "related" to the ultimate termination based upon absences.  Thus, for example, the Plaintiff's unconditional medical release by the City doctor to return to work prior to his discharge is included in the referenced documents (Defendants 00179).  While it is arguable whether that is "related" to his discharge, it is certainly relevant to a claim of discrimination based upon his alleged medical condition.

Without trying to read the Plaintiff's mind, the practical response was to refer the Plaintiff to the two documentary sources that address his termination, his personnel file and the EEOC file.  The latter, which is also generally chronological, has the documents directly related to the termination, including his notice of intent to discharge and exhibit listing wrongful conduct (Defendants 000028-31), the terms and conditions for return to work after the first proposed termination (Defendants 000033-

34), official personnel termination record (Defendants 000043), Plaintiff's civil service appeal (Defendants 000044) and the August 2006 memorandum relied upon in the termination (Defendants 000048).   The December 28, 2005, proposed termination and exhibit is also produced (Defendants 000262-4) and these documents, except the personnel action form, have also been produced by the Plaintiff.

It appears from the Motion to Compel that the real source of frustration of the Plaintiff is that "[i]t is not anticipated that any and all of Defendants [documents relating to the termination] will be contained in the official personal file . . ."  Plaintiff undoubtedly was hoping for secret memos laying out the conspiracy to discriminate against the Plaintiff, but no such documents exist.  Plaintiff's disappointment that his wish for documentary proof of his claim cannot justify compelling production of documents that don't exist.

**4.      Plaintiff's Requests F and G**

Plaintiff asserts the same argument for both these requests.  Plaintiff first stats that Defendants produced  "2016" "unnumbered" documents that are "uncategorized and unorganized".   While it is not clear what Plaintiff intends by this paragraph, it is clear that, except as to being "unnumbered", it is untrue.

On February 20, 2009, within the time for responding to the request for production and prior to the filing of the official objections, Defendants' counsel wrote to Plaintiff's counsel regarding the request.   The letter, attached as Exhibit 2, recognized the Plaintiff's desire for broad access to individual records of other employees for investigation of any putative pattern of discrimination and the

corresponding problems of the confidentially of records for persons who are not parties.

The letter then offered Plaintiff access to all the records maintained by the City if there was an agreement on confidentiality.  The letter further described the specific categories of records as they were maintained in the ordinary course of business, i.e. in notebooks and binders in generally chronological order.

All of those records were made available to the Plaintiff, who designated certain records as ones to be copied.  A photograph of the documents as they were made available to the Plaintiff is attached as Photo 1 to the Affidavit of Katie McDonald, Exhibit 3.

As shown in the photographs and the Affidavit of Katie McDonald, the records are neither "uncategorized" nor "unorganized."  The records are in several binders, each of which has one type of record chronologically for a period of time.  The different categories of records were specifically laid out in the February 20, 2009 letter to Plaintiff's counsel.  Each binder can be identified by the type of document on the first page to match the categories that were specified in the February 20, 2009, letter.  There are also smaller personnel files, each of which has records for one individual.  The designation of the categories of records produced satisfies Rule 34. *Roebling v. Anderson*, (D.C. Cir., 1958) 257 F.2d 615, 103 U.S.App.D.C. 237; *Industrial Commission v. Holohan*, 97 Ariz. 122, 125, 397 P.2d 624, 626 (Ariz.1964).

As further set forth in the Affidavit of Katie McDonald, Exhibit 3, the records are organized in the manner they were kept as part of the regular course of business.

1
2
3
4
5

This satisfies the provisions of Rule 34 which states that "[a] party must produce documents as they are kept in the usual course of business **or** must organize and label them to correspond to the categories in the request." *RFCP*, 34(b)(2)(E)(i) [emphasis added].

6
7
8
9
10
11
12
13
14
15

It is true these records are "unnumbered".  Defendants do not believe that any of the records have any information that will lead to any evidence in this case. Defendants were willing, however, to let the Plaintiff review the records.  As is evident from Katie McDonald's Affidavit, the Plaintiff chose to copy only some of the records.[1]  Since the Defendants have no expectation of using any of the thousands of records copied by the Plaintiff or the additional binders that were not copied, they were unwilling to pay the staff time and cost to number each one or accept the alteration of such numbering to the original records.

16
17
18
19
20
21
22
23
24
25

In addition, there is a practical reason not to number the documents.  Pursuant to the confidentiality agreement reached by the parties, none of the records will be used in their original format with the identification of names of individual non-parties. Instead, parties will agree to use records that have the name redacted and replaced with another form of identification such as a unique number.  If Plaintiff complies with the agreement he and his counsel signed, it is very likely that any records used in the case would be new copies with the change to the names.  At that time the new records could be numbered, eliminating duplication of the numbering process.

26
27

---

[1] While Plaintiff is correct that the Defendants did not make their own copy of those records copied by the Plaintiff, the records which were copied are still marked so that they can be easily identified.

Plaintiff states that attendance detail records were not produced for 2003 and 2004.  As set forth in Katie McDonald's Affidavit, the City's attendance detail records do not extend to 2003, and no such records exist.  Records for 2004 were produced for inspection and were in the red binders copied for the Plaintiff, so she should have those records.  Defendants note that records were not kept for every week and thus there may be gaps in the records which will also occur in the records copied for the Plaintiff.   If Plaintiff in fact cannot find any attendance detail records for 2004, Defendants will copy another set of those records at the Plaintiff's expense.

Defendants' acknowledge that the formal filing of a pleading stating the categories of records that were produced for inspection was not completed until July 7, 2009.  This was, however, only a formality.  The information that Plaintiff believes so critical was provided in the February 20, 2009 letter before the Plaintiff looked at the records or took any depositions.

**5.     Plaintiff's Request H**

Plaintiff initially repeats the claims regarding the production of documents for inspection which are discussed above in section 4.  Plaintiff's counsel then asserts that there was a telephone discussion in which the request for pay records was limited to those of Defendant Orchid Jones.   Defendants' counsel does not recall any such discussion nor any agreement.  To the extent Plaintiff is agreeing that the request was overbroad as set forth in Defendants' Notice of Objection to Further Production of Documents filed on July, 23, 2009, (Docket #66) that will eliminate the broader issue raised in that motion.

To the extent Plaintiff still seeks the records of Orchid Jones, Plaintiff has failed to state a basis for those records.  Plaintiff seeks these records based upon the argument that:

> "Although Defendants deny that Ms. Jones assigned herself excessive overtime as complained by Mr. Shulock, after Mr. Shulock's complaint, Defendant Orchid Jones was allowed less overtime assignment."  Motion, pg. 7.

Plaintiff then argues that this was a motive for retaliation against the Plaintiff because of "the income she lost when her overtime was limited after the complaint by Mr. Shulock. . ."  *Id*.  This, in turn, somehow justifies retaliation and punitive damage claims against both Ms. Jones and her husband, Defendant David Jones.

Plaintiff's argument is based on several faulty assumptions.  The first is that overtime is automatically desirable.  Overtime is not simply additional income, it requires the additional work to earn the income and many employees prefer not to do the extra work.  Thus there can be no automatic assumption that overtime, even with the additional income, is desirable or a potentially motivating force for retaliation.

In the deposition of Orchid Jones, Plaintiff failed to establish that the overtime constituted any motivation one way or another.  Orchid Jones testified she worked varied amounts of overtime and no longer continues to work as much overtime.  (O. Jones Deposition, pg. 38:12 to pg. 39:5.)  She wasn't asked whether that was by her own choice or not, nor whether she was disappointed in the decrease in overtime work or income.

Plaintiff states as a fact that Orchid Jones was not allowed as much overtime after the complaint from the Plaintiff, but there is no evidence of that.   Her administrator, Anita Velasco testified that the higher amount of overtime was because Ms. Jones was in charge of scheduling and put herself in when no one else would take the overtime.   She remembered concerns about whether Ms. Jones was working too much overtime, but only from the perspective of whether she would be too tired, "never any discussions that felt like that she was wrongfully or taking overtime that should be someone else's."   (Velasco Deposition, pg. 100:23-25, see, generally. pg. 99:12-100:25).   Ms. Velasco was not even aware that Plaintiff had complained about the matter.   (*Id*. pg. 101:1-3.)   The deposition of Jim Merten, Ms. Jones immediate supervisor, likewise failed to establish that there was any direction or order to reduce her overtime, let alone anything connected to any complaint by the Plaintiff.

Plaintiff was also allowed to inspect and copy the overtime sign up log, but chose not to make any copies of those records.   Without such evidence as to how many dispatchers signed up for overtime, there is no foundation for any inferences from the pay records of Orchid Jones.

Plaintiff can't establish that Orchid Jones even knew of the Plaintiff's complaint.   Plaintiff only established that Orchid Jones heard some gossip that some people complained about the amount of overtime she worked but that she did not know that it was the Plaintiff. (Deposition of O. Jones, pg. 50:10-18; see also pg. 47:5 to pg. 48:1).

David Jones appears to be included only on the assumption that, assuming Orchid Jones was motivated by the loss of income her husband would be too.  There is no evidence from his deposition that would support that.

Aside from these faulty assumptions and facts, there is no evidence that the Jones' were involved in the decision by the Department Director to terminate the Plaintiff.  Plaintiff has acknowledged in his deposition that as a supervisor, the only involvement of Orchid Jones was to author a memorandum to her supervisors stating that she questioned whether he was alert and that another dispatcher reported he was sleeping.  Plaintiff remembered the facts stated by Ms. Jones in the memo and knew the name of the other dispatcher who had complained he had been sleeping.  (Plaintiff's Deposition, pg. 135:23-138:10.)  Thus there in no dispute that Ms. Jones simply prepared an accurate report.

Plaintiff has no reason to believe that David Jones had anything to do with the decision to terminate him.  (Plaintiff's Deposition, pg. 92:1-6 .)

Even assuming that pay records were to show a sharp decline in overtime for Orchid Jones, there would be no relevancy to such evidence.  Plaintiff cannot show that either of the Jones' would be angered by that change, cannot show either knew the Plaintiff was responsible for the change and cannot show that even if motivated, either Jones had any effect on the termination decision.  Further production of pay records must therefore be denied.

**6.     Defendants' conduct during discovery**

Defendants appreciate the problem of wading through the extensive records in the case since that is what they have to do to prepare their case.  But the fact that effort is required to locate documents is not, itself, a reason to compel the opposing party to do that work.

As set forth above, Defendants identified the categories by letter dated February 20, 2009, before any depositions were taken.  The documents were described and are in binders and notebooks that are self descriptive.  Plaintiff has not once shown any Defendant any of the types of records and asked questions about them during a deposition.  Plaintiff has not yet shown that any of the records have any relevance to the termination of the Plaintiff for the admitted failure to meet attendance requirements.

Defendants submit that Plaintiff is not entitled to any order compelling further production of documents, is not entitled to attorney's fees and that in fact, it is the Defendants who are entitled to attorney's fees for the response to a frivolous and unfounded motion.

Dated this 30th day of July, 2009.

MICHAEL G. RANKIN
City Attorney


By: */s/ Michael W.L. McCrory*     _
      Principal Assistant City Attorney

1
2

I further certify that on July 30th, 2009,
I caused a copy of the foregoing document
to be sent via regular U.S. Mail to:

3
4
5
6

Minnette Burgess, Esq.
Attorney at Law
177 N. Church Ave., Suite 808
Tucson, Arizona  85701
Attorney for Plaintiff

7
8

*/s/ Terri Lawrence*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

{A0024426.DOC/}                              13