WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Phillip G. Shulock, an individual,)
)
Plaintiff,)
)
v.) CV 07-618 TUC DCB
)
City of Tucson, a municipality; Anita Velasco) **O R D E R**
and Jim Merten, husband and wife; David Jones)
and Orchid Jones, husband and wife; Ron Lewis)
and Janice Cain, husband and wife, and Mike)
Nelson, individually,)
)
Defendants,)
_____)

On November 21, 2007, Plaintiff filed this action, *pro se*. He failed to serve the Complaint and after some delay, on July 15, 2008, the Court dismissed the Complaint, with leave to amend. On August 1, 2008, after securing counsel, Plaintiff filed the First Amended Complaint. Discovery was completed after numerous disputes and delay. On November 2, 2009, Plaintiff filed a Motion for Default Judgment as a sanction against Defendant the City of Tucson for destruction of evidence. On November 17, 2009, the Defendants filed a Motion for Summary Judgment on all counts. For all the reasons stated by Defendants, the Court denies the Plaintiff's motion and grants the Defendant's motion.

## The First Amended Complaint

Plaintiff alleges that he began working for Defendants in 1995. Plaintiff is a 911 dispatcher in the City's General Services Department (GSD). He alleges the Defendants retaliated against him because he was a Union steward and filed wrongful conduct charges against Defendant Orchid Jones, and is a male, who was subjected to sex and disability discrimination. (Plaintiff's Response (P's Response), Ex. M: EEOC Charge; Defendants'

1  Motion for Summary Judgment (Ds' MSJ), Statement of Facts (SOF) at Bates # 171: Intake
2  Notes).

3  According to the Equal Employment Opportunities Commission (EEOC) complaint, he
4  reportedly received good performance evaluations from August 23, 1995 until September 3,
5  2005. The first time Defendants tried to discharge him was December 2005, and he was
6  discharged on August 16, 2006. His discharge was upheld October 31, 2006, after civil service
7  review. He alleged that eight female dispatchers with similar attendance problems had not been
8  similarly disciplined. He claimed retaliation because he had filed a wrongful conduct charge
9  in October, 2003, against Orchid Jones, the wife of his supervisor Defendant David Jones. He
10 also alleged that after he prevailed on a grievance, Defendants were supposed to rewrite his
11 performance evaluation so he would not receive a negative evaluation, but they did not and the
12 violation which was the subject of the grievance went into his evaluation resulting in a negative
13 evaluation. (Ds' MSJ, SOF at Bates # 171: Intake Notes).

14 Specifically, Plaintiff charged the following acts were discriminatory: 3/4/1999
15 suspension; 9/26/2003 bad evaluation; 10/15/2003 wrongful conduct complaint; 5/7/2004
16 discipline and grievance; 8/25/2004 bad evaluation; 12/2006 notice to discharge; and 2/16/2006
17 discharge. *Id.* at 192.

18 He reported he had narcolepsy, sleep apnea, depression, high blood pressure, axillary
19 infections, morbid obesity, cephalgia, hepatocellular disease, with occasional severe migraine.
20 He reported problems with concentration, thinking, and staying awake. He needed a regular
21 sleep schedule because he could not always fall asleep and occasionally had trouble staying
22 awake and sometimes needed complete bed rest. *Id.* at 196. He alleged his symptoms began
23 in 6/2003, were diagnosed in 6/2003, and would be lifelong. *Id.* Plaintiff alleged disabilities
24 of depression, narcolepsy, and sleep apnea. *Id.* at 171.

25 The Court starts with the EEOC claim because Title VII and ADA claims are subject to
26 exhaustion requirements and a 300 day statute of limitations period. (Ds' MSJ at 12-13, 21-22
27 (citations omitted) (explaining the limitation period is 300 days prior to the date he filed his
28 EEOC claim because the claim he filed with the Arizona Civil Rights Division was forwarded

to the EEOC); *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) (explaining Title VII exhaustion requirement), 42 U.S.C. § 2000e; *Josephs v. Pacific Bell,* 443 F.3d 1050,1061 (9th Cir. 2006) (same for ADA), 42 U.S.C. § 12101.

The limitation period is from April 21, 2006 through the date of termination, August 16, 2006. Any claim beyond this period or not raised in the EEOC complaint is barred. "Past history may provide background evidence, but to do so there must be a nexus between the past incidents and the actionable conduct." (Ds' Reply at 3); *see also* (P's Response at 7 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (allowing pre and post-limitation period incidents involving the same type of employment actions, occurring frequently, perpetrated by same managers, where conduct was continuous and on-going and discrete act was just the end game of a long series of events).

**The Evidentiary Record**

The Defendant correctly points out that the Plaintiff fails to cite to specific evidence to support many of his rhetorical statements, and the courts "'are not like pigs, hunting for truffles buried in briefs.'" *Greenwood v. Federal Aviation Administration*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The Court notes that Defendant's presentation of the record is not much better. The evidentiary exhibits attached to the Defendant's Statement of Facts are not tabbed nor indexed. The City Document (CD) numbers cited to by Defendant do not exist on the majority of the documents. The Court has been forced by both parties to rut through the record in this case.

The Court relies on the 12/28/2005 Notice of Discharge, which reflects the events related to Plaintiffs discharge. (P's MSJ, SOF at Ex. C: Notice of Discharge.)

Plaintiff's 3/3/2003 through 9/3/2003 6-month evaluation noted problems of failure to be alert at his position and that he reported to work nine times late. On five of those occasions the supervisor called to wake him up, and he subsequently came into work. He was placed on a performance improvement plan. *Id.*

On 1/9/2004, a Special Evaluation noted improvements in punctuality and attentiveness at his position. *Id.*

His 3/3/2003 through 9/3/2004 Annual Evaluation again noted problems of failure to remain alert, failure to give adequate notice of need for sick leave and failure to report for his shifts. His merit increase was delayed and he was "again" placed on a performance improvement plan.[1] *Id.*

On 12/2/2004, a Special Evaluation noted improvement and the need to sustain the improvement. *Id.*

On 3/3/2005, a Special Evaluation stated the terms of an improvement plan had been met and the delayed merit increase was granted. The evaluation stated it was important to sustain the improvements and that consistent performance was required to be considered for future merit increases. *Id.*

On 4/14/2005 and 4/24/2005, the Plaintiff failed to report for scheduled shifts until called, and then reported. He received a letter of counseling for the 4/14/2005 failure to report and an official written reprimand for the 4/24/2005 failure to report. On 7/10/2005, he failed to report to work. *Id.*

Plaintiff's 9/3/2004 through 9/3/2005 Annual Evaluation reflected performance below standards, and his merit increase was denied because of the failure to report on 4/14, 4/24, and 7/10, and late reporting on 5/23 and 5/30/2005. *Id.*

On 10/13 to 10/26/2005, the Plaintiff called in sick for 8 full days, and on 10/20/2005, he was advised that he had exhausted Family Medical Leave. Defendants asked for medical certification from his doctor, due on 11/4/2005, to support his continued absence from work. Instead, the doctor's note of 10/25/2005, reflected he could return to work. He worked 10/27,

---

[1] Plaintiff alleges there was a written reprimand, which through a grievance process was supposed to be removed from his HR file. The written reprimand does not appear in the Notice of Discharge, but there is some evidence it was not removed from his HR file. (P's MSJ, SOF at Ex. O: 12/14/04 email regarding inquiry as to whether reprimand was removed on 11/8/04 and response it was not removed because of negative performance review on 8/25/04 (3/3/2003 through 9/3/2004 Annual Evaluation)). The Court guesses that Plaintiff refers to what was reflected in the EEOC Intake Notes as a 5/7/2004 disciplinary action and grievance. Plaintiff provides no explanation, argument, or evidence identifying either the disciplinary action, the grievance, or the performance evaluation.

- 4 -

28, and 29, but then called in sick for 21 days from 10/30 through 12/7/2005. On 11/18/2005, another doctor's note reflected he could work 11/21/2005. Plaintiff was informed that if he failed to obtain medical certification, his leave from 12/8 to 12/18/2005, would be changed to absent without leave (AWOL). When subsequent medical certifications failed to justify the leave, it was changed to AWOL.[2] *Id.*

On 12/21/2005, Plaintiff met with the Human Resources Department and was counseled on his options. He called in sick 12/22 - 23, and 12/24/2005. *Id.*

On 12/28/2005, the Notice of Intent to Discharge was issued by Defendants. *Id.*

On 1/4/2006, a pre-discharge meeting was held by the Director of GSD, Mr. Lewis, with Plaintiff and his union representative. Plaintiff provided an additional letter from a different doctor, who certified the Plaintiff was currently incapacitated and needed at least 30 days to obtain necessary medical treatment to "get health conditions in order so as to be able to work on a regular basis." Defendants agreed for Plaintiff to have 6 months of leave without pay for medical reasons, and for Plaintiff to return to work on July 24, 2006. Prior to returning to work, Plaintiff was supposed to provide a full medical release from his doctor indicating that he could work a full 10-hours per day, without limitations and be reevaluated and cleared by the City Physician. Upon returning to work, Plaintiff was required to maintain regular attendance and observe all call-in and reporting requirements. He could not miss more than one shift on an unscheduled basis in any 30 day period for 6 months and had to work at least 90% of his scheduled shifts in each 30 day period for 6 months. He was required to maintain alertness throughout the entire shift. Failure to comply would result in termination of employment. (D's

---

[2]The medical records provided by the Plaintiff are not dated and are very difficult to read, but they appear to support the record reflected in the Notice of Discharge. The best the Court can discern from them is that one doctor said he suffered from hypertension, obesity, ancillary dermatitis a malodorous condition. Plaintiff had occasion to be off work from October 30 to December 24, and could return to work on 12/25/2005. He would need to be absent from work for treatment of ongoing problems; treatment consisted of medication and odor control. (P's MSJ, SOF, Ex. L: Medical Records at Bates # 420-21.) Another note reflected incapacity from 12/7 to 12/18 and 12/20, 2005, *id.* at Bates # 175, and concluded the Plaintiff would need to be off work, intermittently, *id.* at Bates # 176. Additionally, there is a doctor's note for "no work" for December 22 to 24, 2005. *Id.* at Bates # 1293.

- 5 -

MSJ, SOF, Ex. Memorandum Terms and Conditions of Continued Employment at Bates ## 176-178.)

On June 29, 2006, Plaintiff returned to work after being released for work by his doctor and the City doctor without any limitations. (D's MSJ, SOF ¶¶ 24-25.)

On July 10th, Plaintiff called in to cancel an overtime shift he was scheduled to work, and on July 25th, he didn't make another scheduled shift. *Id.* ¶¶ 26-28. On August 1, 2006, Defendant Orchid Jones approached the Plaintiff about sleeping at his position because a co-worker reported him to be sleeping. *Id.* ¶¶ 30-31.

Plaintiff offered no medical reasons for his absences. He simply reflects that when the time came to work on July 10, he wasn't able to perform and called in early and said he couldn't make it. D's SOF ¶ 27: Shulock Depo. at 125. On July 25, he explained that he had really been trying hard to work on this shift but it just didn't work out. He wasn't able to function on that day and didn't make it to work. *Id.* These incidents undisputably violated the terms and conditions of his continued employment, and Plaintiff was terminated on August 16, 2006. *Id.* ¶ 33. Plaintiff appealed his termination to the City's Civil Service Commission. He was not allowed to present evidence comparing his discipline to other employees. The Commission affirmed his discharge. *Id.* ¶ 34.

Plaintiff's claim against the City under 42 U.S.C. § 1983 fails because there is no city policy or practice at issue here. *Monell v. New York City Dept. of Social Service,* U.S. 658, 691, 694 (1978). His civil service claim fails because he could have appealed it through the state courts and his failure to do so precludes these claims here. *Maxwell v. Civil Service Com'n. City of Tucson*, 707 P.2d 322 (Ariz. App. 1985) (describing review of Civil Service Commission's decision as being through special action proceeding). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3rd Cir. 2000); *Zinermon v. Burch*, 494 U.S. 113, 125-126 (1990). Plaintiff could have sought relief through a special action proceeding, and his failure to do so precludes the due process claim. Plaintiff's failure to appeal the civil service decision

that there was just cause for his discharge means that any dispute as to those underlying facts are barred by *res judicata*. *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1038 (9th Cir .1994).

## Defendants' Motion for Summary Judgment

Within the statute of limitations period from April 21, 2006 to February 15, 2007, when Plaintiff filed his claim, the only discrete event that occurred was his discharge on August 16, 2006. The bulk of the time, Plaintiff was on medical leave, beginning with the January, 2006, pre-discharge agreement and ending with his return to work on June 29, 2006. Plaintiff attempts to reach beyond the limitation period by arguing that he was retaliated against for filing a complaint for wrongful conduct against Orchid Jones. As best the Court can discern, Plaintiff refers to a 10/15/2003, wrongful conduct complaint against Orchid Jones for allegedly selling travel packages to several employees. (D's MSJ, SOF, Ex. EEOC Complaint Intake Notes at Bates # 171.)

In January 9, 2004, a Special Evaluation noted improvements in Plaintiff's punctuality and attentiveness. While his Annual Evaluation ending on September 3, 2004, again noted problems and delayed his merit increase, by March, 2005, improvements were noted and his merit increase was granted. The record reflects that over the year following the Orchid Jones incident, Plaintiff's conduct improved and Defendants gave him his merit increase. However, beginning around mid-April 2005, Plaintiff's absenteeism worsened.

A *prima facie* case of retaliation requires the Plaintiff to show the following: 1) he engaged in a protected activity; 2) he suffered an adverse employment action, and there was a causal connection between the two. *Bergene v. Salt River Project Agric. Improvement and Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001). Assuming the internal complaint Plaintiff filed against Orchid Jones qualifies as a protected activity, he shows no adverse employment action because he subsequently received an acceptable review and his merit increase. Additionally, the record reflects that his difficulties in punctuality, attentiveness, and intermittent no-shows at work began before the Orchid Jones wrongful-conduct allegations were made by the Plaintiff in 2003 and continued after it. Post Orchid Jones, his attendance improved but the improvement was not maintained. By mid-April, 2005, his behavior had

deteriorated with large blocks of sick-leave absenteeism. He used up all his FML by October 2005. The record does not even imply or suggest any casual connection between the October 2003 Orchid Jones incident and Plaintiff's discharge on August 16, 2006. There is simply no nexus between the two.

The facts in this case reflect that during the statute of limitations period, April 21, 2006 through February 15, 2007, Plaintiff returned to work on June 29, 2006, and worked for approximately six weeks before being terminated because he failed to comply with the terms and conditions for his continued employment. He does not dispute that he failed to show up for work twice and appeared to be sleeping at his position. He does not dispute this violated the terms and conditions for him to continue his employment. The female employees that he alleges were treated more favorably were not similarly situated. While these women missed work and intermittently failed to show up, their records were more similar to the Plaintiff's attendance records prior to mid-2005, before he began being absent from work for weeks and months at a time. There is simply no evidence that Plaintiff's termination was for any other reason besides the legitimate non-discriminatory reason proffered by the Defendants. The record supports only one conclusion: Plaintiff was discharged because of his history of absenteeism, and because after being given one last chance to show he could regularly go to work for a six month period, he failed to maintain his attendance and missed two shifts with no substantive reason and fell asleep at his position. He violated the agreed terms for continued employment and was terminated.

There is no evidence of discrimination based on gender, sexual orientation, disability, hostile work environment or retaliation. Likewise, there may be no claim under the Arizona Civil Rights Act, A.R.S. § 41-1401 et seq.[3], and anyway, Plaintiff is barred from bringing this

---

[3]The Court's ADA and Title VII analysis applies to Plaintiff's ACRA claim. If Plaintiff's claim does not survive under federal law, summary judgment is proper as to his state law claim as well. *See Fancini v. Phoenix Newspapers Ind.,* 937 P.2d 1382, 1388 (Ariz. App. 1996) (ACRA is modeled after federal employment discrimination laws); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) (ADA expressly adopts enforcement provision of Title VII, including relevant portions of ACRA).

pendent state law claim because he failed to file a notice with Defendant, a public entity within 180 days after the cause of action accrued, A.R.S. § 12-821.01.

Summary Judgment is an acceptable procedure for avoiding wasteful trials. *Rand v. Rowland*, 154 F.3d 952, 956-957 (9th cir. 1998). Summary Judgment should be granted where the pleadings, discovery, disclosure materials and affidavits show that there is "no genuine issue as to any material fact" and the party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009). Here, the Court finds there is not even a scintilla of evidence to support the Plaintiff's claims.

Plaintiff complains that Defendants have destroyed the evidence he needs to prove his claim of gender discrimination, but they provided attendance records for his fellow employees for January 1, 2004 through December 31, 2006. The City has admittedly, within the normal course of its business operations, destroyed employee disciplinary records such as letters of reprimand after they were incorporated into employee performance evaluations. Transitory records are only kept for one to two years. Defendants disclosed the performance evaluations for Plaintiff's coworkers. There has been no spoilation of crucial evidence.

**Accordingly,**

**IT IS ORDERED** that the Motion for Default or Partial Summary Judgment and Sanctions (doc. 84) is DENIED.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Seal Pleadings and Exhibits in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (doc. 109) is GRANTED.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (doc. 87/89) is GRANTED.

/////
/////
/////

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment for Defendants and against Plaintiff.

DATED this 6th day of July, 2010.

David C. Bury
United States District Judge